IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CHARLES WILLIAMS, | |
| Petitioner, | CIVIL ACTION NO.: 2:20-cv-94 |
| v. | |
| LINDA GETER, | |
| Respondent. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Charles Williams ("Williams"), who is currently residing at Dismas Charities in Savannah, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus while he was housed at the Federal Correctional Institution in Jesup, Georgia. Doc. 1. Respondent filed a Motion to Dismiss, Williams filed a Response, and Respondent filed a Reply.[1] Docs. 9, 11, 15. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Williams' § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Williams leave to proceed *in forma pauperis* on appeal.

## BACKGROUND

Williams was sentenced in the Northern District of Georgia on October 18, 2005, to 240 months' imprisonment after he pleaded guilty to: distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); conspiracy to possess with intent to distribute at least 50 grams of

---

[1] The Court thanks the parties for their timely responses to the May 7, 2021 Order. Docs. 16, 17, 18. It was not clear to the Court whether jurisdiction remained proper in this District upon Williams' release from detention based on the information contained on the Bureau of Prisons' ("BOP") website. Doc. 16.

cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and 846; conspiracy to possess with intent to distribute at least 500 grams of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Doc. 1-2.  Williams filed a motion for reduction of sentence under the First Step Act, and the Northern District of Georgia court granted his requested relief by sentencing Williams to 180 months' imprisonment, to be followed by 8 years' supervised release, on April 26, 2019.  Doc. 1-3.  The Bureau of Prisons ("BOP") recalculated Williams' sentence in light of his resentencing, and Williams was released on supervised release on April 29, 2019, via good conduct time release.  Doc. 1-9 at 3.

On July 25, 2019, Williams was arrested in Ware County, Georgia, on drug-related charges and was arrested by the United States Marshals Service on August 26, 2019.  Doc. 9-1 at 3, 20.  Williams was sentenced in the Northern District of Georgia on January 8, 2020, to 24 months' imprisonment and a 6-month period of supervised release at Dismas Charities as a result of revocation proceedings.  Id. at 24.  Williams was released from detention on May 4, 2021, via good conduct release, id. at 26, and is currently residing at Dismas Charities.  Docs. 16, 17.

### DISCUSSION

In his Petition, Williams asserts he had 16 months of good conduct time in reserve, yet the BOP would not credit "this banked time toward his supervised release revocation sentence . . . ."  Doc. 1 at 1.  Williams maintains he is entitled to his immediate release because the BOP should award him time he is due.  Id.

Respondent contends Williams is not entitled to any additional credit and the Court should dismiss his Petition.  Doc. 9 at 1.  Specifically, Respondent asserts Williams cannot apply any good conduct time earned during service of his previous sentence toward his new revocation

2

sentence. Id. at 3. Respondent also asserts Williams did not overserve his earlier sentence, but, even if he did, Williams cannot "bank time" against his new sentence. Id. at 5, 6. Further, Respondent states the BOP's interpretation of its policy relating to sentence computation is entitled to deference. Id. at 10. Respondent also states Williams' assertions about the conditions of his confinement are not cognizable habeas claims. Id. at 13. The Court addresses Respondent's arguments.

## I.   Whether Williams is Entitled to Good Conduct Time Earned During Previous Incarceration

Respondent asserts a revocation sentence is distinct from an initial sentence. Doc. 9 at 3. In addition, Respondent contends a revocation sentence cannot commence before it is imposed and the BOP is not obligated to "re-credit" a prisoner with good conduct time after his release has been revoked. Id. at 4. Thus, Respondent posits any good conduct time Williams earned during his original sentence cannot be credited against his revocation sentence. Id. at 5.

In contrast, Williams states 18 U.S.C. § 3585(b) requires his "vested good time credit" was held in reserve for use against his revocation sentence. Doc. 11 at 2. Williams argues upon his release from custody on April 29, 2019, he served a sentence "that was equivalent to a sentence of at least 199 months."[2] Id. at 3. Williams asserts the authority Respondent relies on in support of her position deals with parole and is not applicable here, as he was on supervised release. Id. at 4, 5.

"It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision . . . .

---

[2]   Williams reasons he served almost 174 months in prison and earned approximately 25 months' good conduct time, resulting in a 199-month sentence. Doc. 11 at 3.

3

Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release." 28 C.F.R. § 2.35(b).[3] As other courts have held in consideration of this question, a revocation sentence is separate and distinct from the original, underlying sentence for purposes of calculating good conduct time. Beal v. Kallis, No. 19-CV-3093, 2020 WL 822439, at *2 (D. Minn. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 818913 (D. Minn. Feb. 19, 2020) ("The moment that Beal's prior terms of imprisonment ended was also the moment that Beal became ineligible for additional good-time credit resulting from those terms of imprisonment." (quoting § 2.35(b))); Kieffer v. Rios, No. 19-CV-0899, 2019 WL 3986260, at *1 (D. Minn. Aug. 23, 2019), *aff'd*, No. 19-2933, 2019 WL 8194484 (8th Cir. Oct. 2, 2019) (discussing good conduct time calculation within context of First Step Act of 2018); Racine v. Fed. Bureau of Prisons, Civ. A. No. 07-1834, 2007 WL 1585154, at *5 (D.N.J. May 31, 2007) (finding no merit to petitioner's contention his "sentence on violating supervised release is a continuation of and part of his original custodial term on his underlying drug conviction.  While supervised release is imposed as part of the original sentence, any incarceration ensuing from the revocation of supervised release is generally based on new conduct, and 'is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast.'" (quoting United States v. McNeil, 415 F.3d 273, 277 (2d Cir. 2005))); Stelluto v. Wendt, No. Civ. A. 105CV31, 2005 WL 3277661, at *3 (N.D. W. Va. Nov. 30, 2005) (declining to aggregate petitioner's initial sentence and revocation sentence for purposes of calculating good conduct time); Schmitz v. Scibana, No. 04-

---

[3] The Court was unable to find any authority supportive of a position the Federal Regulations concerning parole are not applicable to sentences subjected to terms of supervised release.

4

C-414-C, 2004 WL 1563302, at *1 (W.D. Wis. July 9, 2004) ("[P]etitioner has already completed the 60-month sentence and is now serving a new one.  He points to no authority that would allow this court to either treat the two sentences as one or order the bureau to remedy a past erroneous calculation by making up the difference on a new sentence.").

Here, Williams' release on his original sentence eliminated any good conduct time he may have accrued during his original sentence, and that good conduct time cannot be credited against his sentence resulting from revocation proceedings.  To do so would be contrary to applicable authority, as well as the weight of persuasive authority this Court has reviewed.  The Court should **GRANT** this portion of Respondent' Motion and **DENY** this portion of Williams' Petition.

## II.     Whether Williams Overserved his Sentence

Respondent alleges the remainder of Williams' good conduct time expired upon his release because his time in custody was less than the days of his sentence.  Doc. 9 at 5.  Respondent notes Williams was released on his original sentence immediately upon his resentencing based on his time served and good conduct time and any remaining good conduct time he earned had no effect after his release.  Id. at 6.  Respondent contends Williams did not overserve his sentence but, even if he had, he cannot bank time against his future sentence.  Id. at 6–7.  Respondent also contends the "weight of authority and public policy counsel against allowing" the banking of time.  Id. at 10.

According to Williams, § 3585(b) requires the BOP to award him with the 19 months he overserved on his original sentence toward his revocation sentence.  Doc. 11 at 7.  Williams contends these 19 months of overservice were spent in official detention prior to the commencement of his revocation proceedings.  Williams also contends his revocation sentence is

part of his underlying sentence.  Id.  Williams states § 3585(b) requires this time be credited against "a term of imprisonment" not "the term of imprisonment."  Id. at 8 (italics omitted).  Williams asserts the 180-month sentence he received was below the time he had already served, rendering him eligible for credit for this "overserved time."  Id. at 13.

Respondent observes good conduct time is a credit against time spent in official detention, operates to allow a prisoner to avoid time in official detention, and is not a separate term of imprisonment allowing for overserving.  Doc. 15 at 1–2.  In addition, Respondent contends good conduct time is a "credit against a term of imprisonment that vests on the date an inmate is released."  Id. at 2.  Respondent also contends § 3585(b) does not apply in this case because Williams' good conduct time was not time spent in official detention.  Id.

Generally, "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed."  18 U.S.C. § 3585(b).  In Reno v. Koray, the United States Supreme Court held "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility,' [18 U.S.C.] § 3621(b), and who were subject to [the] BOP's control."  515 U.S. 50, 58 (1995); see also Rodriguez v. Lamer, 60 F.3d 745, 747–48 (11th Cir. 1995) (holding time spent under house arrest is not "official detention" under § 3585(b) and decided after Koray); Jackson v. Keller, No. 2:10CV504, 2012 WL 4127627, at *2 (M.D. Ala. June 28, 2012) (time spent in pretrial home detention did not constitute 'official detention' within the meaning of § 3585(b) and no entitlement to the sentencing credit sought), *report and recommendation adopted*, 2012 WL 4127624 (M.D. Ala. Sept. 18, 2012); Hans v. Haynes, 2:11-cv-88, 2011 WL 3444437, at *1 n.1 (S.D. Ga. July 8, 2011) (observing Program Statement

6

5880.20 implemented Koray and precluded credit against a subsequent sentence when petitioner on supervised release or otherwise having to report daily to United States Probation because such requirement is not considered time in official detention), *report and recommendation adopted*, 2011 WL 3444345 (S.D. Ga. Aug. 8, 2011), *aff'd* 470 F. App'x 855 (11th Cir. 2012).

Prior to the commencement of his sentence on the revocation proceedings, Williams was not in a penal or correctional facility and was not under the control of the BOP or of the Attorney General.  Rather, the most Williams could claim is he had to report to United States Probation while he was on supervised release, but any such condition would fall far short of the detention § 3585(b) contemplates and the Supreme Court described in Koray.  Even if Williams were entitled to additional good time credit toward his revocation sentence he claims he did not receive, federal law provides those credits could not be used either to shorten the period of his supervised release or to shorten the period of any future imprisonment Williams served for violating the conditions of his release on his original sentence.  28 C.F.R. § 2.35(b); Garland v. Johnson, No. 1:19-CV-0053-P, 2019 WL 5106274, at *1 (W.D. La. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 5108184 (W.D. La. Oct. 11, 2019) (citing United States v. Johnson, 529 U.S. 53, 60 (2000) (holding length of a supervised release term may not be reduced by reason of excess time served in prison)); Bailey v. Southerland, 821 F.2d 277, 278–79 (5th Cir. 1987).

Accordingly, Williams did not "overserve" his original sentence, nor is he entitled to credit against any future sentence when he was not in official detention.  To the extent Williams raises a due process claim, he does not assert such a claim independently of his credit calculation claim.  See Doc. 1 at 12 (claiming the administrative remedies program does not speak to the BOP's denial of "16 months vested good conduct time without due process); id. at 17 ("BOP

stripping Mr. Williams of those credits, which would extinguish his supervised release revocation sentence and immediately free him from custody, without explanation or process or[sic] is a violation of due process under the Fifth Amendment.") (bold omitted).  Nor does Williams provide the Court with any factual or legal assertions, independent of his arguments regarding credit calculation, which would support any claimed due process violation.[4]  The Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Williams' Petition.

### III.     Whether BOP's Interpretation of Policy is Entitled to Deference

Respondent notes the BOP is responsible for sentence computations, and the BOP's interpretation of its own guidelines is subject to deference.  Doc. 9 at 10–11.  Respondent argues unused good conduct time is not "time spent in official detention[]" under Program Statement 5880.28 and the BOP is not required to award Williams any credit for his unused good conduct time.  Id. at 12.

Williams asserts the BOP's "warped" interpretation of its policy to deny him credit is unreasonable and not entitled to deference.  Doc. 11 at 14.  While Williams states § 3585 is

---

[4]     In his Reply, Williams again stated the failure to award credit violates the due process clause and cites, for the first time, North Carolina v. Pearce, 395 U.S. 711, 718 (1969).  Doc. 11 at 13 n.8.  Williams also stated the Government did not respond to this claim, so he does not re-raise his claim in his Reply. Id.  In its later brief, the Government responds Williams did not allege a free-standing due process claim but it already addressed Williams' claim the failure to properly credit him to a sentence credit to which he contends entitlement violated due process.  Doc. 15 at 11–12.  The Court agrees with the Government's assessment.  In addition, the Pearce citation does not support Williams' claim.  In Pearce, the United States Supreme Court determined there is a violation of a "basic constitutional guarantee" "that no man can be twice lawfully punished for the same offence[]"—especially "when a second punishment is proposed in the same court, on the same facts, for the same statutory offense."  395 U.S. at 717–18.  The Court held "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense."  Id. at 718–19.  As noted above, Williams committed separate offenses at separate times and received separate sentences—his original sentence and his revocation sentence, which was based on conduct separate from the offenses underlying his original sentence.

"clear on its face," if the Court finds it is not, the BOP's interpretation is contrary to legislative intent and the plain text of Program Statement 5880.28.  Id.

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action.  See 5 U.S.C. § 703.  However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626.  The Eleventh Circuit Court of Appeals has further indicated this lack of jurisdiction applies even in a § 2241 habeas action, unless the petitioner is challenging the underlying rules and regulations which establish the criteria governing the BOP's decision-making process.  Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions.").  Thus, where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution.  See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014).  Additionally, where a challenge concerns a BOP Program Statement, courts give the BOP "some deference" when determining whether the Program Statement is a reasonable implementation of the BOP's relevant statutory authority.

Cook, 208 F.3d at 1319–20; Santiago-Lebron, 767 F. Supp. 2d at 1352–53; Barr v. United States, No. 4:16cv108, 2016 WL 6841691, at *4 (N.D. Fla. Oct. 28, 2016), *report and recommendation adopted by* 2016 WL 6832635 (N.D. Fla. Nov. 18, 2016).

The BOP's determination regarding Williams' good conduct time and release falls under the purview of § 3625. The BOP's determination on this matter is an adjudicative, discretionary determination and not a rulemaking one. "And that decision is not subject to judicial review." Cook, 208 F.3d at 1319. Even accepting Williams' arguments as being the BOP acted outside of its statutory authority or violated the Constitution, the BOP's implementation of the calculation of good conduct time credits upon release to supervision and then additional sentencing under Program Statement 5880.20 is entitled to "some deference." Thus, the Court should **GRANT** Respondent's Motion to Dismiss and **DENY** Williams' Petition on this basis.

### IV.   Conditions of Confinement Claims

Respondent states Williams' allegations concerning exposure to COVID-19 are conditions of confinement claims and are not bases for habeas relief. Doc. 9 at 13. Williams offers no response to Respondent's position.

The distinction between claims which may be brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and those which must be brought as habeas petitions is reasonably well-settled. Claims in which prisoners challenge the circumstances of their confinement are civil rights actions, not habeas corpus actions. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006); Gorrell v. Hastings, 541 F. App'x 943, 945 (11th Cir. 2013). Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment). Preiser v. Rodriguez, 411 U.S. 475, 500

(1973).  For example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a civil rights claim.  See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

Williams cannot bring the conditions of confinement claims he asserts via a habeas petition, as such claims are not cognizable under § 2241.  Williams states he faces an "immediate, non-speculative, and potentially lethal risk to his health" due to the COVID-19 pandemic.  Doc. 1-1 at 11.  Through these assertions, Williams does not assert any challenge to his sentence, conviction, or duration of confinement.  Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Williams' § 2241 Petition.

V.     **Whether Williams is Entitled to Release**

According to Respondent, Williams cannot demonstrate a likelihood of success on the merits of his claims or some extraordinary and exceptional circumstance and, thus, he is not entitled to conditional release.  Williams responds "languishing in prison" during a pandemic and having given the BOP at least 10 extra months is exceptional.  Doc. 11 at 21.  Williams distinguishes his case from others by stating a recalculation of his sentence would result in his immediate release.  Id.

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'"  Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014).  This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations."  Id.  There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement."  Harrell v. The Fla. Bar, 608 F.3d

1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted).  Regarding the mootness strand, the United States Supreme Court has made clear "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted).  Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted).  Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed.  Rather, the Supreme Court has made clear the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'"  Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  "Events which occur subsequent to the filing of a petition may render the matter moot."  Johnson v. Glover, No. 1:04-CV-413, 2006 WL 1008986, at *1 (M.D. Ala. Apr. 18, 2006) (citing Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 350 (D.C. Cir. 1997)).

Williams has been released from official detention since he filed the instant Petition.  Williams has received his specific request—release from detention—and there is no longer a "live controversy" over which the Court can give meaningful relief.  Friends of Everglades, 570 F.3d at 1216.  Thus, this portion of Williams' Petition should be denied as moot.

## VI.    Leave to Proceed *in Forma Pauperis*

The Court should also deny Williams leave to appeal *in forma pauperis*.  Though Williams has not yet filed a notice of appeal, it would be appropriate to address that issue in the

Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Williams' Petition and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Williams *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Williams' § 2241 Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Williams leave to proceed *in forma pauperis* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate

Judge failed to address a contention raised in the Petition or any other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 29th day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA